ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| TTF, LLC ) | ASBCA Nos. 59511, 59513, 59515 |
| ) | |
| Under Contract Nos. SPM4A7-08-C-0416 ) | |
| SPM4A7-08-M-4438 ) | |
| SPM4A7-08-M-4749 ) | |

APPEARANCE FOR THE APPELLANT:     Mr. David Storey
                                                              President

APPEARANCES FOR THE GOVERNMENT:     Daniel K. Poling, Esq.
                                                                       DLA Chief Trial Attorney
                                                                   Edward R. Murray, Esq.
                                                                     Trial Attorney
                                                                     DLA Aviation
                                                                     Richmond, VA

OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN
ON THE GOVERNMENT'S MOTION TO DISMISS

These appeals arise under three separate contracts between the Defense Logistics Agency Aviation (DLA Aviation or the government), a field activity of the Defense Logistics Agency, and appellant TTF, LLC (TTF or appellant). The appeals are taken from contracting officer's decisions to terminate the three contracts for default. The government moves to dismiss the appeals for lack of jurisdiction as untimely. We grant the government's motion in part.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

*The B-52 Skin Panel Assemblies Contract – SPM4A7-08-C-0416*

1. The government awarded appellant Contract No. SPM4A7-08-C-0416 (Contract 0416) on 20 June 2008. Contract 0416 set forth appellant's address as 1400 Mills Highway, Breaux Bridge, LA. (59511, 59512, R4, tab 1 at 1)[1]

---

[1] All Rule 4 file cites are to the Rule 4 files in the corresponding consolidated appeals: ASBCA Nos. 59511, 59512; 59513, 59514; and 59515, 59516. ASBCA Nos. 59512, 59514, and 59516 are not at issue in the government's motion to dismiss. The latter appeals are the subject of cross-motions for summary judgment which have been decided separately on the same day.

2. Contract 0416 incorporated by reference the standard disputes clause, FAR 52.233-1, DISPUTES (JUL 2002) (59511, 59512, R4, tab 1 at 18).

3. By letter dated 30 April 2014, the terminating contracting officer notified appellant that Contract 0416 was terminated for default. The letter advised in part as follows:

> This notice constitutes a final decision of the contracting officer from which you have the right of appeal. You may appeal this decision to the Armed Services Board of Contract Appeals. If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Board within 90 days from the date you receive this decision....

The letter concluded with the statement that "[c]onfirming modifications will follow as posted on DIBBS.[2]" (59511, 59512, R4, tab 7 at 2) The contracting officer transmitted the termination decision to appellant by email dated 1 May 2014 (*id.* at 1).

4. A copy of the termination decision was also sent to appellant by certified mail (59511, 59512, R4, tab 8).

5. On 2 May 2014, the government executed unilateral Modification No. P00003, on Standard Form 30 (SF 30), terminating Contract 0416 for default (59511, 59512, R4, tab 4 at 1-2). Under the heading "Decision," the modification stated, in pertinent part:

> THIS IS THE FINAL DECISION OF THE CONTRACTING OFFICER. YOU MAY APPEAL THIS DECISION TO THE ARMED SERVICES BOARD OF CONTRACT APPEALS. IF YOU DECIDE TO MAKE SUCH AN APPEAL, YOU MUST MAIL OR OTHERWISE FURNISH WRITTEN NOTICE THEREOF TO THE BOARD WITHIN NINETY (90) DAYS FROM THE DATE YOU RECEIVE THIS DECISION....

---

[2] "DIBBS" stands for the "DLA Internet Bid Board System." DLA Acronym List, *available at* http://www.dla.mil/Documents/acronyms.pdf. DIBBS is a "web-based application that allows vendors to search for, view, and submit secure quotes on Requests For Quotations (RFQs)...search and view Request[s] For Proposals (RFPs), Invitations For Bid[s] (IFBs), Awards, and other procurement information related to DLA." DLA, *Doing Business With DLA*, www.dla.mil/SmallBusiness/Pages/DoingBusinesswithDLA.aspx.

....

> This modification confirms Notice of Termination by
> LETTER dated 04/30/2014 which is hereby incorporated by
> reference....

(*Id.* at 2) By means of the DIBBS automated email notification system, appellant was notified that the government had executed a modification to Contract 0416 and was provided a link to an electronic copy of Modification No. P00003 (gov't mot., ex. 24 at 1).

6. The copy of the termination decision sent by certified mail followed a circuitous route to appellant's hands. United States Postal Service (USPS) tracking information shows that the termination decision was first sent to appellant's address in Breaux Bridge, LA, where it arrived at a "Closed" business on 6 May 2014. The termination decision was then forwarded to appellant's post office box at its new location in Altus, OK. The tracking information indicates that the termination decision was "Available for Pickup" at Altus on 9 May 2014 and 14 May 2014. (59511, 59512, R4, tab 8 at 4-5) Appellant signed for receipt of the termination decision on 19 May 2014 (*id.* at 3).

7. By letter dated 14 August 2014, and postmarked 18 August 2014, appellant submitted a notice of appeal from the "decision (or failure of a decision) for a Termination for default and final decision in a letter dated 30 April 2014 and received in late 19 May 2014" (59511, 59512, R4, tab 9 at 7). The Board docketed the appeal as ASBCA No. 59511.

*The Access Covers Contract – SPM4A7-08-M-4438*

8. The government awarded appellant Contract No. SPM4A7-08-M-4438 (Contract 4438) on 12 January 2008. Contract 4438 contained the same Breaux Bridge, LA address for appellant. (59513, 59514, R4, tab 1 at 1)

9. Contract 4438 incorporated by reference the standard disputes clause, FAR 52.233-1, DISPUTES (JUL 2002), and a standard default terminations clause, FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) (59513, 59514, R4, tab 1 at 14-15).

10. By letter dated 30 April 2014, the terminating contracting officer notified appellant that Contract 4438 was terminated for default. This letter, like the one terminating Contract 0416, above, notified appellant of its right to appeal the decision to the Board "within 90 days from the date you receive this decision" and concluded by saying "[c]onfirming modifications will follow as posted on DIBBS." (59513, 59514, R4, tab 8 at 6) The contracting officer transmitted the termination decision to appellant by email dated 1 May 2014 (*id.* at 1, 6).

3

11. A copy of the termination decision was also sent to appellant by certified mail (59513, 59514, R4, tab 9).

12. On 2 May 2014, the government executed unilateral Modification No. P00004, on SF 30, terminating Contract 4438 for default (59513, 59514, R4, tab 5 at 1-2). Under the heading "DECISION," the modification stated, in pertinent part:

> THIS IS THE FINAL DECISION OF THE CONTRACTING OFFICER. YOU MAY APPEAL THIS DECISION TO THE ARMED SERVICES BOARD OF CONTRACT APPEALS. IF YOU DECIDE TO MAKE SUCH AN APPEAL, YOU MUST MAIL OR OTHERWISE FURNISH WRITTEN NOTICE THEREOF TO THE BOARD WITHIN NINETY (90) DAYS FROM THE DATE YOU RECEIVE THIS DECISION....
>
> ....
>
> This modification confirms Notice of Termination by LETTER dated 05/01/2014[3] which is hereby incorporated by reference....

(*Id.* at 2) The DIBBS automated email notification system transmitted an email notifying appellant that the government had executed a modification to Contract 4438 and providing appellant a link to an electronic copy of the modification (gov't mot., ex. 25 at 1).

13. According to USPS tracking information, the copy of the decision terminating Contract 4438 sent by certified mail followed the same circuitous route as the copy of the decision terminating Contract 0416, above (59513, 59514, R4, tab 9 at 3-4). According to the tracking information, the termination decision was "Available for Pickup" in Altus on 14 May 2014 (*id.* at 3). Appellant signed for receipt of the termination decision on 19 May 2014 (*id.* at 5).

14. By letter dated 14 August 2014 – and, again, postmarked 18 August 2014 – appellant submitted its notice of appeal from the "decision (or failure of a decision) for a Termination for default and final decision in a letter dated 30 April 2014 and received in 19 May 2014" (59513, 59514, R4, tab 10 at 1). The Board docketed the appeal as ASBCA No. 59513.

---

[3] It is not apparent from the record whether this is a mistaken reference to the termination decision dated 30 April 2014 or a reference to some other letter dated 1 May 2014.

4

15.  The government awarded appellant Contract No. SPM4A7-08-M-4749 (Contract 4749) on 31 January 2008.  Contract 4749 also showed appellant's address in Breaux Bridge, LA.  (59515, 59516, R4, tab 1 at 1)

16.  Contract 4749 incorporated by reference the standard disputes clause, FAR 52.233-1, DISPUTES (JUL 2002), and a standard default terminations clause, FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) (59515, 59516, R4, tab 1 at 19-20).

17.  By letter dated 30 April 2014, the terminating contracting officer notified appellant that Contract 4749 was terminated for default.  Like the letters terminating Contract 0416 and Contract 4438, above, this letter notified appellant of its right to appeal the termination decision to the Board "within 90 days from the date you receive this decision" and concluded with: "Confirming modifications will follow as posted on DIBBS."  (59515, 59516, R4, tab 6 at 2)  The contracting officer transmitted the termination decision to appellant by email dated 1 May 2014 (*id.* at 1).

18.  A copy of the termination decision was also sent to appellant by certified mail (59515, 59516, R4, tab 7).

19.  On 2 May 2014, the government executed unilateral Modification No. P00002, on SF 30, terminating Contract 4749 for default (59515, 59516, R4, tab 3 at 1-2).  Under the heading "DECISION," the modification stated, in pertinent part:

> THIS IS THE FINAL DECISION OF THE
> CONTRACTING OFFICER.  YOU MAY APPEAL THIS
> DECISION TO THE ARMED SERVICES BOARD OF
> CONTRACT APPEALS.  IF YOU DECIDE TO MAKE
> SUCH AN APPEAL, YOU MUST MAIL OR
> OTHERWISE FURNISH WRITTEN NOTICE THEREOF
> TO THE BOARD WITHIN NINETY (90) DAYS FROM
> THE DATE YOU RECEIVE THIS DECISION....
>
> ....
>
> This modification confirms Notice of Termination by
> LETTER dated 04/30/2014 which is hereby incorporated by
> reference....

(*Id.* at 2)  The DIBBS automated email notification system transmitted an email notifying appellant that the government had executed a modification to Contract 4749

and providing appellant a link to an electronic copy of the modification (gov't mot., ex. 26 at 1).

20. According to USPS tracking information, the copy of the decision terminating Contract 4749 sent by certified mail followed a slightly more direct route than the certified-mail copies of the two termination decisions above, skipping the trip to Breaux Bridge and arriving at Altus on 8 May 2014 (59515, 59516, R4, tab 7 at 3). Appellant signed for receipt of the termination decision on 8 May 2014 (*id.* at 4).

21. By letter dated 14 August 2014 and postmarked 18 August 2014, appellant submitted its notice of appeal from the "decision (or failure of a decision) for a Termination for default and final decision in a letter dated 30 April 2014 and received in late May 2014" (59515, 59516, R4, tab 8 at 1). The Board docketed the appeal as ASBCA No. 59515.

## DECISION

In moving to dismiss ASBCA Nos. 59511, 59513, and 59515, the government contends that the Board lacks jurisdiction over these appeals because appellant received the termination decisions by email on 1 May 2014 but did not appeal until 18 August 2014, more than 90 days later. Additionally, regarding ASBCA No. 59515, the government argues that even if the Board were to consider the date that the decisions were received to be the date that appellant signed for the certified-mail copies of the termination decisions, appellant signed for receipt of the termination decision on 8 May 2014, more than 90 days before appellant filed its notice of appeal. Appellant counters with the argument that the contracting officer could not have rendered a decision absent an affirmative claim by the contractor, so the 90-day appeal period could never have commenced and thus the appeals cannot be untimely. Appellant argues alternatively that it did not sign for the copies of the termination decisions sent by certified mail until 19 May 2014 and, therefore, its appeals are timely.

As a preliminary matter, we address appellant's argument as to the validity of the contracting officer's termination decisions absent an affirmative claim by the contractor. The contracts at issue in these appeals are all subject to the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109 (SOF ¶¶ 2, 9, 16). The linchpin of this Board's jurisdiction under the CDA is a written claim by either the contractor or the government. *Favor Company*, ASBCA No. 58843, 14-1 BCA ¶ 35,778 at 175,029; *Connectec Company, Inc.*, ASBCA No. 57546, 11-2 BCA ¶ 34,797 at 171. It is well-settled that the decision to terminate a contract for default is considered to be a government claim against the contractor from which the contractor may appeal to the Board without the necessity of filing an affirmative claim. *Amina Enterprise Group, LTD*, ASBCA Nos. 58547, 58548, 13 BCA ¶ 35,376 at 173,580; *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 764 (Fed. Cir. 1987. Thus, a contractor may appeal from the decision to terminate its contract for default, and, provided the contractor seeks to challenge only the propriety of the termination decision, no affirmative claim by the

6

contractor is required. Accordingly, to the extent that appellant argues that the termination decisions could not have triggered the CDA's 90-day appeal period, appellant is incorrect.

We now turn our attention to the other question before us: when, for the purposes of determining the Board's jurisdiction under the CDA, did appellant receive the termination decisions in these appeals?

The CDA requires a contractor wishing to appeal a contracting officer's final decision to the Board to do so within 90 days from the date of receipt of the final decision. 41 U.S.C. § 7104(a). It is well-settled that the Board lacks jurisdiction over any appeal filed outside of this 90-day appeal period, which is statutory and cannot be waived by the Board. *Frasson Lodovico S.r.l.*, ASBCA No. 58645, 14-1 BCA ¶ 35,525 at 174,114; *AST Anlagen-und Sanierungstechnik GmbH*, ASBCA No. 51854, 04-2 BCA ¶ 32,712 at 161,836; *Mid-Eastern Industries, Inc.*, ASBCA No. 51287, 98-2 BCA ¶ 29,907 at 148,065; *Cosmic Construction Co. v. United States*, 697 F.2d 1389, 1390 (Fed. Cir. 1982). The day the contractor receives the final decision is not counted in determining the 90-day period, while the day the contractor mails or delivers its appeal is included. Board Rule 5(b); *Eastern Computers, Inc.*, ASBCA No. 49185, 96-2 BCA ¶ 28,343 at 141,549.

It is the government's burden to establish the date the final decision was received, but the burden of proof is on appellant to establish that its appeal was timely filed. *Singleton Enterprises*, ASBCA No. 58235, 14-1 BCA ¶ 35,554 at 174,227; *Mid-Eastern Industries*, 98-2 BCA ¶ 29,907 at 148,065. As discussed above, the record in these appeals is replete with evidence showing the various dates on which appellant received copies of the termination decisions. The record contains copies of the emails sent from the contracting officer to appellant, all dated 1 May 2014, to which were attached copies of the contracting officer's termination decisions (SOF ¶¶ 3, 10, 17). The record also contains copies of the contract modifications, all dated 2 May 2014, which formally terminated the contracts at issue in these appeals, and the government has provided evidence that its automated notification system alerted appellant by email that the modifications had been executed and were available for appellant to view electronically (SOF ¶¶ 5, 12, 19). Finally, hard copies of the termination decisions were sent to appellant by certified mail (SOF ¶¶ 4, 11, 18), and the record contains copies of delivery receipts signed by appellant showing that appellant signed for the copies of the termination decisions by certified mail on 8 May 2014 (SOF ¶ 20) and 19 May 2014 (SOF ¶¶ 6, 13).

We have previously held that sending multiple copies of a contracting officer's final decision without indicating which of them is intended to begin the running of the appeal period confuses a contractor as to the date for appeal of the decision, entitling the contractor to compute the date from receipt of the last copy. *Frasson Lodovico*, 14-1 BCA ¶ 35,525 at 174,114-15; *AST*, 04-2 BCA ¶ 32,712 at 161,836. However,

7

where appellant had previously requested to receive correspondence by means of a particular medium, an earlier copy of the decision received through that medium may start the 90-day appeal clock. *Quimba Software, Inc.*, ASBCA No. 57636, 12-1 BCA ¶ 34,910 at 171,651-52 (untimely appeal 91 days after receipt of final decision by email where appellant had requested to receive correspondence by email); *Mid-Eastern Industries*, 98-2 BCA ¶ 29,907 at 148,065 (appeal untimely when filed more than 90 days after fax transmission of final decision at appellant's request).

Here, appellant was sent or notified of multiple copies of the termination decisions: first, as attachments to emails sent directly to appellant; second, by means of an automated system notifying appellant by email that appellant's contracts had been modified and providing appellant with links to electronic copies of the modifications formally terminating appellant's contracts; and third, by certified mail.[4] Nothing in the record indicates that the contracting officer ever instructed appellant as to which of the termination decisions – each of which afforded appellant the right to appeal to the Board within 90 days of receipt – was intended to begin the running of the 90-day appeal period. Appellant bases its notices of appeal on the copies sent by certified mail: the "final decision in a letter dated 30 April 2014 and received in late 19 May 2014" (SOF ¶ 7); the "final decision in a letter dated 30 April 2014 and received in 19 May 2014" (SOF ¶ 14); and the "final decision in a letter dated 30 April 2014 and received in late May 2014" (SOF ¶ 21). Nothing in the record indicates that appellant ever specifically requested to receive correspondence by means of a different medium, such as email. Therefore, we find that the 90-day appeal periods in these appeals began with appellant's receipt of the copies of the termination decisions sent by certified mail.

In ASBCA Nos. 59511 and 59513, appellant signed for receipt of the copies of the termination decisions sent by certified mail on 19 May 2014 (SOF ¶¶ 6, 13). The 90th day from appellant's receipt of the certified-mail copies of the termination decisions fell on Sunday, 17 August 2014. Thus, under Board Rule 5(b), the period for the timely filing of a notice of appeal was extended to the next business day, Monday, 18 August 2014. *See, e.g., DLT Solutions, Inc.*, ASBCA No. 55822, 07-2 BCA ¶ 33,658 at 166,680-81; *KIME Plus*, ASBCA No. 46580, 94-3 BCA ¶ 27,128 at 135,231. Appellant's notices of appeal were postmarked 18 August 2014 (SOF ¶¶ 7, 14). Therefore, appellant's appeals from the decisions to terminate Contract 0416 and Contract 4438 were timely filed, and we have jurisdiction over ASBCA Nos. 59511 and 59513.

Respecting ASBCA No. 59515, appellant signed for receipt of the copy of the termination decision sent by certified mail on 8 May 2014 (SOF ¶ 20). The latest date, then, by which appellant could have filed its notice of appeal was 6 August 2014.

---

[4] We need not and do not decide whether posting a final decision on a website and having an automated email sent to the contractor complies with FAR 33.211(b), or constitutes receipt of the decision for purposes of the CDA.

8

Appellant's notice of appeal was postmarked 18 August 2014 (SOF ¶ 21), 102 days after appellant signed for receipt of the termination decision. Appellant's appeal from the decision to terminate Contract 4749 was therefore untimely filed, and we lack jurisdiction over ASBCA No. 59515.

## CONCLUSION

The government's motion is denied with respect to ASBCA Nos. 59511 and 59513. The government's motion is granted with respect to ASBCA No. 59515 and that appeal is dismissed for lack of jurisdiction.

Dated: 5 February 2015

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59511, 59513, 59515, Appeals of TTF, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9